# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Consumer Financial Protection Bureau, | Civil Action No. 14-cv-09931 |
| Plaintiff, | Stipulated Final Judgment and Order |
| v. | |
| Sprint Corporation, | |
| Defendant. | |

## STIPULATED FINAL JUDGMENT AND ORDER

The Consumer Financial Protection Bureau ("Bureau") commenced this civil action against Defendant Sprint Corporation ("Sprint") on December 17, 2014 to obtain injunctive relief, damages or other monetary relief, civil penalties, and other relief. The Complaint alleges that from 2004 through 2013, Sprint violated Section 1036(a)(1)(B) of the Consumer Financial Protection Act by charging its wireless customers for unauthorized third-party charges.

The Bureau and Sprint, by and through their respective counsel, have requested that the Court enter this Stipulated Final Judgment and Order ("Order").

### FINDINGS

1.      This Court has jurisdiction over the parties and the subject matter of this action.

2.      The Bureau and Sprint agree to the entry of this Order, without adjudication of any issue of fact or law, to settle and resolve all matters in this dispute arising from the conduct alleged in the Complaint to the date this Order is entered.

3.      Sprint neither admits nor denies any allegations in the Complaint, except as specifically stated in this Order. For purposes of this Order, Sprint admits to the facts necessary to establish the Court's jurisdiction over Sprint and the subject matter of this action.

4.      Sprint and the Bureau waive all rights to seek judicial review or otherwise challenge or contest the validity of this Order. Sprint also waives any claim it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Order. Each party will bear its own costs and expenses, including without limitation attorneys' fees.

5.      Entry of this Order is in the public interest.

## DEFINITIONS

The following definitions apply to this Order:

6.      "**Account Holder**" means any individual or entity who is or was responsible for paying all charges associated with all lines on that individual's or entity's mobile phone account with Sprint.

7.       "**Block**" means a restriction placed on a Consumer's account that prevents one or more lines from being used to purchase Third-Party Products and from being charged for Third-Party Charges on a Consumer's Mobile Telephone Bill or Prepaid Account.

8.      A statement is "**Clear and Conspicuous**" if it is disclosed in such size, color, contrast, location, duration, or audibility that it is readily noticeable, readable, understandable, or capable of being heard. A statement may not contradict or be inconsistent with any other information with which it is presented. If a statement materially modifies, explains, or clarifies other information with which it is presented, then the statement must be presented in proximity to the information it modifies, explains, or clarifies in a manner that is readily noticeable, readable, and understandable, and not obscured in any manner. In addition:

i.      An audio disclosure must be delivered in a volume and cadence sufficient for a Consumer to hear and comprehend it;

ii.      A television or internet disclosure must be of a type size, location, and shade and remain on the screen for a duration sufficient for a Consumer to read and comprehend it;

iii.      Disclosures in a print advertisement or promotional material, including but without limitation, a point-of-sale display or brochure materials directed to Consumers, must appear in a type size, contrast, and location sufficient for a Consumer to read and comprehend it; and

iv.      A text-message disclosure must be of a type size and format so that Consumers can notice, read and comprehend the message on their mobile device.

9.      "**Commercial PSMS**" means the use of PSMS to charge for Third-Party Products.

10.     "**Consumer**" means a current or former Sprint Account Holder or other authorized subscriber for which Third-Party Charges are or were placed on the Consumer's Mobile Telephone Bill or Prepaid Account, whether that person is the individual responsible for paying the Mobile Telephone Bill or Prepaid Account, or has a device that is billed to a shared account, or is otherwise authorized to incur charges on the account. "Consumer" does not include any business entity or any state, federal, local, or other governmental entity, if (1) the business entity or government, and not the employees or individuals working for or with that business entity or government, is solely liable to Sprint for payment of all charges placed on that account, and (2) the ability to process Third-Party Charges through that account is not available unless the business entity or government affirmatively requests that certain or all mobile devices be provided the ability to authorize placement of such Third-Party Charges.

11.     "**Effective Date**" means the date that this Order is entered by this Court.

12.     "**Enforcement Director**" means the Assistant Director of the Office of Enforcement for the Consumer Financial Protection Bureau, or his delegate.

13.     "**Express Informed Consent**" means an affirmative act or statement giving unambiguous assent to be charged for the purchase of a Third-Party Product that is made by a Consumer after receiving a Clear and Conspicuous disclosure of material facts.

14.     "**Mobile Telephone Bill**" means a Consumer's paper or electronic monthly statement of charges for Sprint postpaid wireless service.

15.     "**Newly Acquired Entities**" means any entity or entities Sprint acquires in the future.

16.     "**Participating States**" means: Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, Wyoming, and the District of Columbia.

17.     "**Premium Short Messaging Service**" or "**PSMS**" means a service that distributes paid content to a Consumer using the Short Message Service and Multimedia Messaging Service communication protocols via messages that are routed using a Short Code, resulting in a Third-Party Charge.

18.     "**Prepaid Account**" means a Consumer's account for wireless service where funds first must be applied to the account and usage deducts from those funds.

19.     "**Related Consumer Action**" means a private action by or on behalf of one or more consumers or an enforcement action by another government agency brought against Sprint based on substantially the same facts as described in the Complaint. Actions asserted in small claims court or individual arbitrations are not considered Related Consumer Actions. For purposes of this Order, the Assurances of Discontinuance entered into with the Participating States and the Consent Decree

5

entered into with the Federal Communications Commission are not considered a Related Consumer Action.

20.     "**Redress Period**" means the period during which redress is administered beginning on the date this settlement is publicly announced and ending on May 1, 2016.

21.     "**Short Code**" means a common code leased from the CTIA Common Short Code Administration that is comprised of a set of numbers, usually 4 to 6 digits, which text messages can be sent to and received from using a mobile telephone.

22.     "**Sprint**" means Sprint Corporation, including all of Sprint's affiliates, subsidiaries, successors, and assigns.

23.     "**Third Party**" means an entity or entities, other than Sprint, that provide a Third-Party Product to Consumers for which charges are made through Sprint's Mobile Telephone Bills or deducted from Prepaid Accounts.

24.     "**Third-Party Charge**" means a charge for the purchase of a Third-Party Product placed on a Consumer's Mobile Telephone Bill or deducted from a Prepaid Account.

25.     "**Third-Party Product**" means content or services provided by a Third Party that can be used on a Consumer's mobile device for which charges are placed on the Consumer's Mobile Telephone Bill or deducted from a Prepaid Account by Sprint. "Third-Party Product" excludes contributions to charities, candidates for public office, political action committees, campaign committees, campaigns involving a ballot measure, or other similar contributions. "Third-Party Product" also excludes co-

branded and white label products where content and services are sold jointly and cooperatively by Sprint and another entity, where the content or services are placed on the Consumer's Mobile Telephone Bill as a Sprint charge or deducted from a Prepaid Account, and Sprint is responsible for accepting complaints, processing refunds, and other communications with the Consumer regarding the charge. "Third-Party Product" also excludes handset insurance, extended warranty offerings, and collect calling services.

26.     "**Unauthorized Third-Party Charge**" means a Third-Party Charge placed on a Consumer's Mobile Telephone Bill or deducted from a Prepaid Account without the Consumer's Express Informed Consent.

## ORDER

### I.     Conduct Provision

27.     *Commercial PSMS*: Sprint will not make available to Consumers the option to purchase Third-Party Products through Commercial PSMS or bill charges for Commercial PSMS.

### II.     Compliance

28.     *Authorization of Third-Party Charges*: Sprint will begin developing and implementing a system, which will be fully implemented by Sprint no later than September 15, 2015, to obtain Express Informed Consent before a Consumer is charged for any Third-Party Charge or before funds are deducted from a Prepaid Account. The Consumer's Express Informed Consent may be provided to Sprint or to another person or entity obligated to Sprint to obtain such consent. Sprint or the other person or entity

obligated to obtain such consent will retain sufficient information to allow such consent to be verified. If Express Informed Consent is not directly collected by Sprint, Sprint will implement reasonable policies and practices to confirm that Express Informed Consent will  be appropriately collected and documented by the person or entity obligated to do so, and will monitor and enforce those policies and practices to confirm that Express Informed Consent is appropriately collected and documented, and where Express Informed Consent has not been appropriately collected and documented, will require remedial action (which may include, for example, suspension, proactive credits, or retraining), or cease billing for such charges on Mobile Telephone Bills or Prepaid Accounts. While the system described by this Paragraph is being developed and implemented, Sprint will take reasonable steps to obtain Express Informed Consent before a Consumer is charged for any Third-Party Charge. For purposes of this Paragraph, for charges incurred through operating system storefronts, such reasonable policies and practices may, for example, consist of Sprint or its agents making a statistically valid random sample of purchases to demonstrate whether the storefront is collecting Express Informed Consent consistent with this Order. Such Express Informed Consent will be kept for 5 years, consistent with ¶ 45.

29.    *Purchase Confirmation for Third-Party Charges*: Beginning no later than September 15, 2015, Sprint will implement a system whereby the Consumer (and, for multiline accounts, the Account Holder, if designated) will be sent a purchase confirmation, separate from the Mobile Telephone Bill or Prepaid Account, of every Third-Party Charge, including recurring charges, that will appear on his or her Mobile

Telephone Bill or be deducted from his or her Prepaid Account. Any such purchase confirmation will be sent within a reasonable time following the purchase of a Third-Party Product or the recurrence of a Third-Party Charge, and will identify Blocking options that Sprint makes available to Consumers or provide access to such information in a form or format that makes such information Clear and Conspicuous. For multiline accounts, Sprint may provide the Account Holder the option to elect not to receive such purchase confirmations.

30.     *Information on Blocking*: Beginning no later than June 1, 2015, Sprint will:

     i.     At no charge to the Consumer, offer Blocking of Third-Party Charges; and

     ii.     Provide a Clear and Conspicuous disclosure about Third-Party Charges and Blocking options in informational material provided at or near the time of subscribing to service, and in the case of postpaid service which is provided in a context separate from the actual subscriber agreement document, and in the case of prepaid service, is included in the disclosures provided at the time of purchase. Such disclosure will include a description of Third-Party Charges, how Third-Party Charges appear on Mobile Telephone Bills and Prepaid Accounts, and options available to Consumers to Block Third-Party Charges. Consumers will not incur any data or text charges when Sprint provides the disclosure discussed in this Paragraph.

31.     *Billing Information and Format*: No later than the Effective Date:

      i.      All Third-Party Charges will be presented in a dedicated section of the Consumer's Mobile Telephone Bill (or in a dedicated section for each mobile line on the account, if the Mobile Telephone Bill sets forth charges by each line) and will all be set forth in such a manner as to distinguish the Third-Party Charges contained therein from Sprint's service, usage, and other charges. This section of the Consumer's Mobile Telephone Bill will contain a heading that Clearly and Conspicuously identifies that the charges are for Third-Party Products; and

      ii.      The Third-Party Charge billing section required by this Paragraph will include a Clear and Conspicuous disclosure of a Consumer's ability to Block Third-Party Charges, including contact or access information that Consumers may use to initiate such Blocking. If Sprint includes a Third-Party Charge billing section for each mobile line on the account, Sprint will have the option to include the disclosure of a Consumer's ability to Block Third-Party Charges in only the first Third-Party Charge billing section that appears on the Mobile Telephone Bill, rather than in all Third-Party Charge billing sections.

32.    *Consumer Contacts*: When a Consumer contacts Sprint with regard to a Third-Party Charge or a Block, Sprint will:

      i.      Provide the Consumer with access to a customer-service representative who will have access to the Consumer's account information for at least the prior 12 months.

ii.      Offer the Consumer the opportunity to Block future Third-Party

Charges at no charge to the Consumer if the Consumer is a current customer of

Sprint;

iii.      Provide the Consumer a full refund or credit of all Third-Party

Charges the Consumer claims that he or she did not authorize. Sprint may deny a

refund under this Paragraph if:

1.      Sprint has information demonstrating that the Consumer

provided Express Informed Consent to the Third-Party Charge, offers to

provide such information to the Consumer, and, upon request, provides

such information to the Consumer;

2.      The last disputed Third-Party Charge for the particular

Third-Party Product at issue (either a single charge or a recurring charge)

was incurred more than 3 months prior to when the Consumer contacted

Sprint and Sprint is in compliance with ¶ 29 with respect to the charge; or

3.      The Consumer has already received a credit or refund for the

disputed Third-Party Charge, and, upon request, Sprint provides such

information to the Consumer.

iv.      If the Consumer is not satisfied with the relief obtained under the

process contained in ¶ 32.iii Sprint will:

1.      Offer the Consumer the opportunity to receive a full refund if

the Consumer submits his or her request in writing via U.S. Mail, email, or

web-based form affirming that he or she did not authorize such charge,

and provide such refund unless Sprint can demonstrate fraud, misrepresentation in connection with the claim, or that the Consumer provided Express Informed Consent. Sprint will accept requests for refunds as described in ¶ 32.iv via U.S. Mail, email, and web-based form.

       2.     Paragraph 32.iv. will expire 4 years from the Effective Date.

v.     Beginning no later than the Effective Date, not require the Consumer to first contact the Third Party in order to receive a refund or credit of any claimed Unauthorized Third-Party Charge, although this Paragraph does not prohibit asking the Consumer if he or she has contacted the Third Party and if the Consumer has already received a credit or refund from the Third Party for some or all of the claimed Unauthorized Third-Party Charge; and

vi.     In the event a Consumer disputes a Third-Party Charge as unauthorized not:

       1.     Require the Consumer to pay the disputed Third-Party Charge, including any related late charge or penalty;

       2.     Send the disputed Third-Party Charge to collection;

       3.     Make any adverse credit report based on nonpayment of the disputed Third-Party Charge; or

       4.     Suspend, cancel, or take any action that may adversely affect the Consumer's mobile telephone service or functionality for any reason related to non-payment of the disputed Third-Party Charges.

       vii.        The remedies in ¶ 32 are inapplicable to Consumer complaints involving dissatisfaction with purchases where the Consumer does not dispute that Consumer authorized the purchase.

     33.     *Newly Acquired Entities:*  In the event that Sprint acquires any new entity, Sprint will take immediate steps to cease charging for all Commercial PSMS. With respect to Newly Acquired Entities, Sprint will provide the Consumer with access to a customer service representative who will have access to the Consumer's account information related to Third-Party Charges for at least the prior 12 months. If such information is not available, Sprint will have 12 months to come into compliance with ¶ 32 with respect to such entities and, while coming into compliance, respond to the Consumer's inquiry within 10 days using available information. As to all other requirements contained in this Order, Sprint will have a reasonable period of time, which in no event will exceed 6 months, in which to bring the Newly Acquired Entity into compliance with this Order. During that period, Sprint will take reasonable steps to obtain Express Informed Consent before a Consumer is charged for any Third-Party Charge.

     34.     *Training*: Sprint will, for at least 6 years from the Effective Date, conduct a training program with its customer-service representatives, at least annually, to administer the requirements of this Order. To the extent that Sprint no longer permits Third-Party Charges on Consumers' Mobile Telephone Bill or the deduction of Third-Party Charges on Consumers' Prepaid Accounts, Sprint will conduct one training

program within 3 months of such cessation and will have no further obligation to conduct training programs under this Paragraph.

**III.   Redress**

35.     Within 30 days of the Effective Date, Sprint will reserve $50,000,000 ("Redress Amount") for the purpose of providing redress to Consumers. The Redress Amount must be identified as a liability in Sprint's budget.

36.     Sprint submitted a comprehensive written plan for providing redress consistent with this Order ("Redress Plan") to the Enforcement Director. The Enforcement Director has not objected to this plan. Under the terms of the Redress Plan, Sprint will provide up to $50,000,000 for the purpose of providing redress to Consumers. Sprint will provide notice of Consumers' right to file claims and receive redress, under the supervision of the Bureau, according to the terms set forth in the Redress Plan.

37.     Sprint must implement and adhere to the steps, recommendations, deadlines, and timeframes outlined in the Redress Plan as if they were incorporated into this Order. Sprint and the Bureau, in consultation with the Participating States and Federal Communications Commission, may revise the terms of the Redress Plan.

38.     Under 31 U.S.C. § 7701, Sprint, unless it already has done so, must furnish to the Bureau its taxpayer identifying numbers, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

39.     Within 30 days of the entry of a final judgment, consent order, or settlement in a Related Consumer Action, Sprint must notify the Enforcement Director

14

of the final judgment, consent order, or settlement in writing. That notification must indicate the amount of redress, if any, that Sprint paid or is required to pay to consumers and describe the consumers or classes of consumers to whom that redress has been or will be paid. Sprint's obligation to report Related Consumer Actions will expire 5 years from the Effective Date of this Order.

## IV.   Reporting Requirements

40.   Sprint must notify the Bureau of any development that may affect its compliance obligations arising under this Order, including but not limited to a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against Sprint; or a change in Sprint's name or address. Sprint must provide this notice at least 30 days before the development or as soon as practicable after the learning about the development, whichever is sooner.

41.   Within 7 days of the Effective Date, Sprint must designate at least one telephone number and email, physical, and postal address as points of contact, which the Bureau may use to communicate with Sprint.

## V.   Order Distribution and Acknowledgment

42.   Within 30 days of the Effective Date, Sprint must deliver a copy of this Order to each of Sprint's board members and executive officers.

43.   For 5 years from the Effective Date, Sprint must deliver a copy of this Order to any business entity resulting from any change in structure described in § IV

and any future board member or executive officer with responsibilities related to Third-Party Charges before the board member or executive officer assume his or her responsibilities.

44.     Sprint must secure a signed and dated statement acknowledging receipt of a copy of this Order, ensuring that any electronic signatures comply with the requirements of the E-Sign Act, 15 U.S.C. § 7001 et seq., within 30 days of delivery, from all persons receiving a copy of this Order under this Section.

## VI.   Recordkeeping

45.     Sprint must create and maintain for at least 5 years from the Effective Date all documents and records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Bureau.

## VII.   Notices

46.     Unless otherwise directed in writing by the Bureau, Sprint must provide all submissions, requests, communications, or other documents relating to this Order in writing, with the subject line, "*Consumer Financial Protection Bureau v. Sprint Corporation*, Case No. 14-cv-09931" and send them to:

> Assistant Director for Enforcement
> Consumer Financial Protection Bureau
> ATTN:  Office of Enforcement
> 1700 G Street, NW
> Washington, DC 20552
>
> Enforcement_Compliance@cfpb.gov

## VIII.  Cooperation with the Bureau

47.    Sprint must provide information related to the subject matter of this action in its possession or control within 30 days of receiving a written request from the Bureau. If Sprint determines such information is in the possession or control of a third-party, Sprint will promptly request such information from the third-party, and Sprint will work in good faith to collect and provide such information to the Bureau on a mutually-agreed-upon date.

## IX.    Compliance Monitoring

48.    Within 30 days of receipt of a written request from the Bureau, Sprint must submit additional compliance reports or other requested information related to this Order, which must be made under penalty of perjury; provide sworn testimony; or produce documents.

49.    Related to this Order, Sprint must permit Bureau representatives to interview any employee or other person affiliated with Respondent who has agreed to such an interview. The person interviewed may have counsel present.

50.    Nothing in this Consent Order will limit the Bureau's lawful use of civil investigative demands under 12 C.F.R. § 1080.6 or other compulsory process.

## X.    Release

51.    The Bureau releases and discharges Sprint from all potential liability for law violations that the Bureau has or might have asserted based on the practices alleged in the Complaint, to the extent such practices occurred before the Effective Date and the Bureau knows about them as of the Effective Date. The Bureau may use the practices

alleged in the Complaint in future enforcement actions against Sprint or its affiliates to establish a pattern or practice of violations or the continuation of a pattern or practice of violations or to calculate the amount of any penalty. This release does not preclude or affect any right of the Bureau to determine and ensure compliance with this Order, or to seek penalties for any violations of this Order.

## XI.     Retention of Jurisdiction

52.     The Court will retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**IT IS SO ORDERED.**

Dated this ____ day of _____, 2015

_____
William H. Pauley III
United States District Court Judge