UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Consumer Financial Protection Bureau, <br><br> Plaintiff, <br><br> v. <br><br> Sprint Corporation, <br><br> Defendant. | Civil Action No. 14-cv-09931 <br><br> Memorandum of Law in Support of Plaintiff's Motion for Entry of Stipulated Final Judgment and Order |

**Memorandum of Law in Support of Plaintiff's Motion for Entry of Stipulated Final Judgment and Order**

**I.      Preliminary Statement**

The Consumer Financial Protection Bureau ("Bureau") moves the Court to enter the Stipulated Final Judgment and Order[1] filed on May 12, 2015 ("Consent Order"). This Court has the authority to enter the Consent Order and the Bureau has the authority to enforce the Consent Order. The terms and enforcement mechanisms of the Consent Order are clear and it reflects a resolution of the allegations asserted by the Bureau against Sprint. There was no improper collusion or corruption to taint the negotiation of the Consent Order. Finally, the Consent Order serves the public interest. Because the Consent Order is fair, reasonable, and in the public interest, as explained more fully below, the Court should enter the Consent Order.

**II.     Background**

On December 17, 2014, the Bureau filed a Complaint against Sprint, alleging that

---

[1] ECF No. 14-2, attached as Exhibit A to the Declaration of Genessa Stout ("Stout Declaration").

Sprint violated §§ 1031 and 1036(a)(1)(B) of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5531, 5536(a)(1)(B), when Sprint unfairly allowed unauthorized, third-party charges to be placed on its customers' wireless-telephone bills.[2] Specifically, the Bureau alleged that Sprint created a third-party billing system that invited unauthorized charges by, among other things, (i) enrolling customers in third-party billing without their authorization; (ii) giving third parties access to its customers and its billing system without implementing adequate compliance controls; (iii) failing to adequately resolve customer disputes; and (iv) ignoring warnings from customers, government agencies, and public-interest groups about the increasing incidence of unauthorized wireless charges.[3]

The Bureau's lawsuit against Sprint was the culmination of an extensive investigation, conducted jointly with the Federal Communications Commission ("FCC") and the attorneys general for the 50 states and the District of Columbia ("Participating States"), into the company's third-party billing practices. Along with its federal and state partners, the Bureau reviewed voluminous records, interviewed witnesses, examined consumer complaints, and took other investigative steps. The Bureau continued its investigation of Sprint's practices after filing the Complaint.

On May 12, 2015, the Bureau and Sprint jointly moved the Court to enter the Consent Order. The proposed Consent Order, negotiated by the Bureau and Sprint, requires Sprint to pay $50,000,000 in redress to its customers for unauthorized third-party charges[4] and to make substantial changes to its third-party billing practices.[5] The

---

[2] Complaint ¶¶ 2, 36, 37, Exhibit B to Stout Declaration.
[3] Complaint ¶ 19.
[4] Consent Order ¶ 35.
[5] Consent Order ¶¶ 28-34.

Redress Plan, which the Bureau and Sprint created to administer the $50 million in customer refunds, establishes a straightforward and streamlined claims process for Sprint customers billed for unauthorized third-party charges to obtain a refund.[6] In addition, the proposed Consent Order requires Sprint to implement a number of significant changes to its third-party billing practices to prevent future unauthorized third-party charges and to ensure prompt and effective remediation of any that occur. Among other things, Sprint will

- obtain prior consent from its customers before placing third-party charges on their wireless bills;

- provide its customers with prompt confirmation of any third-party purchases;

- allow its consumers to block third-party charges;

- display third-party charges in a separate, dedicated section of customers' wireless bills;

- direct consumers inquiring about a third-party charge to a Sprint customer-service representative with access to the consumer's account information for at least the prior 12 months; and

- provide consumers a full refund or credit of all third-party charges the consumer claims he or she did not authorize unless Sprint can demonstrate that the consumer consented to the charge or the consumer has already received a credit or refund for the disputed third-party charge.

Over the course of several months, the Bureau, the FCC, and the Participating States negotiated a global resolution of the parties' respective third-party-billing investigations with Sprint. On May 12, 2015, the FCC entered a consent decree requiring Sprint to pay a $6,000,000 fine to the U.S. Treasury and imposing the same changes to Sprint's third-party billing practices that are set forth in the Consent Order.[7] On that same date, the Participating States entered into assurances of discontinuance or consent

---

[6] *See* Redress Plan, Exhibit C to Stout Declaration.
[7] FCC Consent Decree, Exhibit D to Stout Declaration.

orders requiring Sprint to pay $12,000,000 in fines to the Participating States and mandating those same third-party billing changes.[8]

The third-party billing improvements set forth in the Consent Order are substantially similar to and closely track the requirements imposed on Sprint's competitors in wireless-cramming settlements the FCC, the Participating States, and the Federal Trade Commission negotiated with AT&T Mobility, LLC[9] and T-Mobile USA, Inc.[10] Proposed consent orders reflecting those settlements were entered by the courts to which they were presented. Additionally, the injunctive relief also mirrors what the Bureau negotiated with Cellco Partnership d/b/a Verizon Wireless,[11] and the Stipulated Judgment and Final Order between the Bureau and Verizon was recently entered by the court.

## III. The Proposed Consent Order

For the reasons set forth below, the proposed Consent Order is fair, reasonable, and in the public interest, and should be approved and entered by the Court. The Second Circuit clarified that when reviewing a proposed consent order involving a government agency with enforcement authority, the district court must determine whether the proposed resolution is fair, reasonable, and, if injunctive relief is part of the settlement,

---

[8] Vermont led the Participating States. The Assurance of Discontinuance between Vermont and Sprint is attached as Exhibit E to Stout Declaration.

[9] *FTC v. AT&T Mobility, LLC*, Stipulated Order for Permanent Injunction and Monetary Judgment (Case No. 14-cv-03227), Exhibit F to Stout Declaration.

[10] *Federal Trade Commission v. T-Mobile USA, Inc.*, Stipulated Order for Permanent Injunction and Monetary Judgment (Case No. 14-cv-00967), Exhibit G to Stout Declaration.

[11] *Consumer Financial Protection Bureau v. Cellco Partnership d/b/a Verizon Wireless*, Stipulated Final Judgment and Order (Case No. 15-cv-03268), Exhibit H to Stout Declaration.

4

whether the consent order would serve the public interest.[12] Specifically, in evaluating a consent order for fairness and reasonableness, the Court should assess: (1) the basic legality of the consent order; (2) whether the terms and enforcement mechanisms of the consent order are clear; (3) whether the consent decree reflects a resolution of the claims in the complaint; and (4) whether the consent order is tainted by improper collusion or corruption.[13]

### 1. The Bureau is authorized to enforce the Consent Order and this Court has the power to enter it.

The "basic legality" requirement is satisfied if the Court has the authority to enter the consent order and the government agency has the authority to enforce it.[14] Under the CFPA, the Bureau has the authority to commence a civil action in federal district court against "covered persons" for violations of the statute.[15] As set forth in the Complaint, the Bureau alleged that Sprint is a "covered person" under the CFPA because it extends credit to, and processes transactions for, consumers in connection with goods and services that Sprint does not directly sell or that consumers do not directly purchase from Sprint.[16] The parties agreed to resolve this matter without Sprint admitting or denying any allegations in the Complaint.[17]

Because the proposed Consent Order is properly before this Court and the Bureau has the authority to enforce it, the "basic legality" requirement is met.

---

[12] *SEC v. Citigroup Global Markets, Inc.*, 752 F.3d 285, 294 (2nd Cir. 2014).
[13] *Id.*
[14] *Benjamin v. Jacobson,* 172 F. 3d 144, 158 (2nd Cir. 1999).
[15] 12 U.S.C. § 5564(a), (f).
[16] Complaint ¶ 9; 12 U.S.C. § 5481(6), (15)(A)(i) & (vii).
[17] *Citigroup,* 752 F.3d at 293 ("With good reason-there is no basis in the law for the district court to require an admission of liability as a condition for approving a settlement between the parties.").

### 2. The terms of the Consent Order and its enforcement mechanisms are clear.

The terms of the proposed Consent Order are detailed and sufficiently specific. The proposed Consent Order details required changes in Sprint's business practices and provides dates by which those changes must occur. Moreover, the proposed Consent Order makes clear that the Bureau has the authority to monitor and enforce Sprint's compliance with the Order.[18]

### 3. The proposed Consent Order requires Sprint to change its relevant practices and provide redress to consumers.

The Complaint alleges that Sprint unfairly (i) enrolled customers in third-party billing without their authorization; (ii) gave third parties access to its customers and its billing system without implementing adequate compliance controls; (iii) failed to adequately resolve customer disputes; and (iv) ignored warnings from customers, government agencies, and public-interest groups.

The terms of the proposed Consent Order squarely address these allegations. Under ¶ 28 of the Consent Order, Sprint must obtain express informed consent[19] before a Sprint customer is billed for any third-party charge or before funds are deducted from a prepaid account.[20] After the transaction, Sprint must provide the consumer with a purchase confirmation.[21] Sprint must give consumers the power to opt-out of third-party billing entirely by offering them the ability to block third-party charges.[22] The proposed Consent Order also dictates how Sprint must respond to customer contacts

---

[18] *See, e.g.,* Consent Order § IX.
[19] Consent Order ¶ 28.
[20] *Id.*
[21] *Id.* at ¶ 29.
[22] *Id.* at ¶ 30.

regarding third-party charges or blocking third-party charges.[23]

### 4. The proposed Consent Order is not the product of improper collusion.

The proposed Consent Order is the product of intense, arms-length negotiations among the Bureau, the FCC, the Participating States, and Sprint. Negotiations took place over several months among senior agency officials, Sprint executives, and counsel.

### 5. The proposed Consent Order serves the public interest.

The Bureau and its federal and state partners concluded after months of negotiations with Sprint that the proposed Consent Order is solidly in the public interest. It creates a straightforward claims process to give refunds to consumers who suffered unauthorized third-party charges, and it mandates extensive changes to Sprint's third-party-billing practices to ensure consumers are not harmed in the future. Moreover, the proposed Consent Order does not bar private litigants from pursuing their own claims as receiving refunds are not conditioned on consumers releasing any potential claims. Thus, consumers will receive monetary and other benefits under the order without relinquishing any claims they may wish to pursue.  For these reasons, the Bureau has concluded that the Consent Order serves the public interest.[24]

## IV. Conclusion

For the reasons set forth above, the Bureau respectfully submits that the proposed Consent Order is fair, reasonable, and in the public interest, and therefore, should be approved and entered by the Court.

---

[23] *Id.* at ¶ 32.
[24] *Citigroup*, 752 F.3d at 296, ("The job of determining whether the proposed S.E.C. consent decree best serves the public interest … rests squarely with the S.E.C., and its decision merits significant deference.").

Respectfully Submitted,

Anthony Alexis
*Enforcement Director*

Jeffrey Paul Ehrlich
*Deputy Enforcement Director*

Natalie R. Williams
*Assistant Litigation Deputy*

_____
Genessa Stout
*Enforcement Attorney*
CONSUMER FINANCIAL PROTECTION BUREAU
1700 G Street, NW
Washington, DC 20552
Telephone: 202-435-7920
Facsimile: 202-435-7329
e-mail: genessa.stout@cfpb.gov

*Counsel for Plaintiff*